**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MYRA R. RUTTENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| GEOFFREY W. RUTTENBERG, DAVID W. | ) | Case No. 08 C 4898 |
| RUTTENBERG a/k/a BUZZ RUTTENBERG, | ) | |
| JEROME MEYER, in his capacity as trustee of | ) | |
| THE ALDINE TRUST, and 2002 NORTH | ) | |
| MOHAWK, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR 12(b)(6) MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

SUMMARY OF ALLEGATIONS ........................................................................1

ARGUMENT...........................................................................................................4

I.    STANDARD FOR PLEADING FRAUD AND RICO ................................4

II.   COUNT I FOR FRAUD MUST BE DISMISSED .....................................4

III.  COUNT III FOR RICO MUST BE DISMISSED .......................................9

    A.   PLAINTIFF DOES NOT ALLEGE THE ELEMENTS OF A §1962(B) VIOLATION. ..............9

    B.   PLAINTIFF FAILED TO IDENTIFY AN "ENTERPRISE" WITH SUFFICIENT SPECIFICITY. ..............................................................................................10

    C.   PLAINTIFF FAILS TO IDENTIFY A "PERSON" WHO ENGAGED IN RACKETEERING ACTIVITY EVEN IN CONCLUSORY TERMS...........................11

    D.   PLAINTIFF HAS FAILED TO ALLEGED A "PATTERN" OF RACKETEERING...................11

        1.   Plaintiff has Failed to Allege Close-Ended Continuity. ...................12

            a.   Plaintiff Has Not Alleged Sufficient Number Of Predicate Acts. ..........12

            b.   Plaintiff Identifies Only Herself As An Alleged Victim. .......................13

            c.   Plaintiff Identifies Only One Alleged Scheme. ...................................13

            d.   Plaintiff Identifies One Claimed Injury. ...................................13

        2.   Plaintiff Also Fails to Allege "Open-Ended Continuity." ...............14

    E.   THE ALLEGED ACTS OF MAIL AND WIRE FRAUD ARE NOT PLED WITH SPECIFICITY. ..............................................................................................14

IV.   COUNT V FOR UNJUST ENRICHMENT MUST BE DISMISSED................16

V.    COUNT VI FOR CONSTRUCTIVE TRUST MUST BE DISMISSED ............17

VI.   COUNT II FOR CONSPIRACY MUST BE DISMISSED...........................17

VII.  COUNT IV FOR FRAUDULENT CONVEYANCE MUST BE DISMISSED .................17

VIII. THE FRAUDULENT CONVEYANCE AND RICO ACTIONS ARE TIME-BARRED ........................................................................................20

IX.   MYRA SIGNED RELEASES THAT BAR CLAIMS AGAINST JEROME THAT AROSE ON OR BEFORE JANUARY 1, 2008 .....................................21

VII.  PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES MUST BE STRICKEN ...........22

**TABLE OF CASES**

**CASES**                                                                                                                    **PAGE**

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987). ........................20

*Anderson v. Lybeck*, 15 Ill.2d 227, 154 N.E.2d 259 (1958)...........................................................17

*Arenson v. Whitehall Convalescent & Nursing Home*, 880 F.Supp. 1202 (N.D. Ill. 1995) ..................................................................................................................................14, 15, 16

*Ault v. C.C. Services, Inc.*, 232 Ill.App.3d 269, 597 N.E.2d 720 (3d Dist. 1992) ...........................5

*Bajorat v. Colombia-Breckenridge Development Corp.*, 944 F. Supp. 1371 (N.D. Ill. 1996) .....15

*Barry v. Land O' Lakes Municipal Airport Comm'n*, 377 F.3d 682 (7th Cir. 2004)....................20

*Belkow v. Celotex Corp.*, 722 F.Supp. 1547 (N.D. Ill. 1989). ......................................................23

*B.F.G. Blackman*, 2008 U.S. Dist. LEXIS 60585, at * 8 (N.D. Ill. July 21, 2008) ......................17

*Bronstein v. Kalcheim & Kalcheim, Ltd.*, 90 Ill.App.3d 957, 414 N.E.2d 96 (1st Dist. 1980) .......7

*Clerk v. Robert W. Baird Co., Inc.*, 142 F.Supp.2d 1065 (N.D. Ill. 2001). .................................14

*Flynn v. Corus Bank*, 1998 U.S. Dist. LEXIS 19130, at *11 (N.D. Ill. Dec. 1, 1998)............11, 14

*Fujisawa Pharmaceutical Co. v. Kapoor*, 16 F.Supp.2d 941 (N.D. Ill. 1998)..............................17

*Galinski v. Kessler*, 134 Ill.App.3d 602, 480 N.E.2d 1176 (1st Dist. 1985) .................................17

*Gamboa v. Velez*, 457 F.3d 703 (7th Cir. 2006) ..............................................................................9

*Hengel v. Hot 'n Now, Inc.*, 825 F.Supp. 1311 (N.D. Ill. 1993)..................................................5, 6

*Hernandez v. Ballesteros*, 333 F.Supp.2d 6 (D. P.R. 2004) .............................................14, 15, 16

*H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893 (1989)....................................11, 14

*HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 545 N.E.2d 672 (1989).............................................................................................................................................16

*In re VMS Securities Litigation*, 752 F.Supp. 1373 (N.D. Ill. 1990) ..............................................9

*Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321 (7th Cir. 1994)..............................................14, 15, 16

*Johnson v. La Grange State Bank*, 73 Ill.2d 342, 383 N.E.2d 185 (1978). ....................................7

*Jones v. Lamp*, 845 F.2d 755 (7th Cir. 1988) ...............................................................................12

*Kelsay v. Motorola, Inc.*, 74 Ill.2d 172 (1978) .............................................................................22

*LaSalle Nat'l Bank v. Willis*, 378 Ill.App.3d 307, 880 N.E.2d 1075 (1st Dist. 2007)...................22

*Loitz v. Remington Arms Co.*, 138 Ill.2d 404 (1990) ...............................................................22

*Matrix IV, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, No 06 C 1661,
2007 WL 853968 at *5 (N.D. Ill March 15, 2007) ...........................................................4, 5, 9

*Meyer v. Mooshol*, 188 F.Supp.2d 936 (N.D. Ill. 2002) ...............................................13

*Midwest Grinding Co., Inc. v. Spitz*, 716 F.Supp. 1087 (N.D. Ill. 1989)(7th Cir. 1992).................9

*Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986).........................................12

*North American Processing Co. v. Crown Meat Co.*, 1994 WL 280082, at *5 (N.D. Ill.
1994) ................................................................................................................................12

*Olive Can Co., Inc.*, 906 F.2d 1147  (7th Cir. 1990) .....................................................13

*Perez v. Abbot Lab.*, 1995 U.S. Dist. LEXIS 2295 at * 35 (N.D. Ill. Feb. 14, 1995).......................5

*Phillips v. Sears Roebuck & Co.*, 2008 WL 2003186, * 2 (SD. Ill. 2008) ....................................10

*Pucci v. Litwin*, 828 F.Supp. 1285 (N.D. Ill. 1993).................................................................14, 17

*R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F.Supp. 1499 (N.D. Ill. 1990) ........................14

*Reed v. Reed*, 747 N.W.2d 18 (Neb. 2008)...................................................................18

*Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640 (7th Cir. 1995)..................................................10

*Schroeder v. Lufthansa German Airlines*, 1987 U.S. Dist. LEXIS 9496, at *7
(N.D. Ill. Oct. 15, 1987)......................................................................................................22

*Segreti v. Lome*, 147 F.Supp. 484 (N.D. Ill 1990) ........................................................10

*Spires v. Mooney Motors, Inc.*, 229 Ill.App.3d 917, 595 N.E.2d 225 (4th Dist. 1992).................22

*Stachon v. United Consumers Club, Inc.*, 229 F.3d 673 (7th Cir. 2000) .....................................10

*Talbot v. Robert Matthews Distrib. , Co.*, 961 F.2d 654, 663 (7th Cir. 1992)..............................13

*Toman v. Svoboda*, 39 Ill. App. 3d 394, 349 N.E.2d 668 (1st Dist. 1976).....................................19

*U.S. v. All Meat & Poultry Products,* 470 F.Supp. 2d 823 (2007) .................................................17

*United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003)..............................20

*Village of Fox River Grove v. Grayhill, Inc.,* 806 F.Supp. 785 (N.D. Ill. 1992) .........................21

*White v. DaimlerChrysler Corp.*, 368 Ill.App.3d 278, 856 N.E.2d 542 (1st Dist. 2006)...............7

*Wooley v. Jackson Hewitt, Inc.*, 540 F.Supp.2d 964 (N.D. Ill. 2008)..............................11

*Yu v. IBM Corp.*, 314 Ill.App.3d 892, 732 N.E. 2d 1173 (1st Dist. 2000) ......................7

*Zimmerman v. Paulson,* 524 F.Supp.2d 1077 (N.D. Ill. 2007).......................................19

## Other Authorities

18 U.S.C. 1343.................................................................................................................15

18 U.S.C. §1962(b)............................................................................................................9

735 ILCS 5/2-607.1 .........................................................................................................22

740 ILCS 160/10(a)-(b) ...................................................................................................18

740 ILCS 160/2(f)............................................................................................................18

740 ILCS 160/2(d)............................................................................................................18

740 ILCS 160/2(c)............................................................................................................18

750 ILCS 5/503 (e) ..........................................................................................................19

C/70131.1

### DEFENDANTS' MEMORANDUM IN SUPPORT
### OF THEIR 12(b)(6) MOTION TO DISMISS

Defendants Geoffrey W. Ruttenberg ("Geoffrey"), David W. Ruttenberg a/k/a Buzz Ruttenberg ("David" or "Buzz"), Jerome Meyer, in his capacity as trustee of The Aldine Trust (the "Aldine Trust") and 2002 North Mohawk, LLC ("2002 North Mohawk")(collectively the "Defendants"), by their attorneys Ice Miller LLP and Chen Nelson Roberts Ltd., submit this memorandum in support of their 12(b)(6) Motion to Dismiss Plaintiff's Complaint. In support of their motion, Defendants state as follows:

### INTRODUCTION

Geoffrey and Myra are in the middle of an acrimonious divorce proceeding.  In a misguided effort to gain leverage over her husband in that divorce proceeding, Myra has filed this six-count complaint against her husband, her father-in-law, David, and David's trust, and a single-purpose entity created to develop a residential lot located in Chicago, accusing them all of conspiring to transfer certain properties from Geoffrey to his father during their marriage. Despite the length of the complaint, and its colorful rhetoric, all of the counts fail to state a claim upon which relief can be granted.  For the reasons stated herein, Defendants request that the Court dismiss all counts filed against them with prejudice, or alternatively, that the Court dismiss the RICO count with prejudice, and dismiss the remaining common law counts with leave to re-file the same in state court before the judge who is handling the divorce proceeding.

### SUMMARY OF ALLEGATIONS

Plaintiff claims that Defendants engaged in a series of transactions that were designed to defraud the "marital estate."  Some of these transactions occurred before either party had filed for divorce, some occurred during the pendency of the first divorce proceeding (which was later dismissed), and one is supposedly going to occur in the future during the pendency of the current

divorce proceeding. Because each of the transactions occurred at different times and involved different parties, they each will be separately identified.

*The Mohawk Property.* Geoffrey and his father, David, are developers of "high-end, residential real estate. (¶¶ 9, 11.) On or about October, 2003, Geoffrey and Myra acquired the lot located at 2002 N. Mohawk in 2004. (¶ 20.) David, Geoffrey's father, "gave" Geoffrey and Myra a "personal check for $300,000 to purchase the lot." (*Id.*) In July, 2004, some 18 months before she filed the first divorce proceeding, Myra quit-claimed her interest in the Mohawk Property to defendant 2002 North Mohawk, LLC. (¶22.)

The members of 2002 North Mohawk, LLC are the Aldine Trust (99%) and the Brixton Group (1%). (¶ 23.) David is the sole beneficiary of the Aldine Trust. (¶ 12.) The Aldine Trust acquired its 99% ownership interest in 2002 North Mohawk, LLC because it repaid David the $300,000 that he had "loaned" to Myra and Geoff to acquire the lot. (¶ 26.) Brixton Group is the name of Geoffrey's real estate development company. (¶ 23.)

It took approximately two years for Geoffrey to build a residential home on 2002 N. Mohawk. (¶ 20.). In December 2006, after the first divorce proceeding was dismissed, Geoffrey and Myra moved into 2002 N. Mohawk because it had not sold. (¶ 24.) Myra and Geoff lived together at the 2002 N. Mohawk until the Geoffrey filed the second divorce proceeding in 2008. (¶ 24.) On April 30, 2008, Geoffrey "contracted for the sale of 2002 North Mohawk for $3,000,000." (¶ 25.) The complaint is silent regarding how much debt is owed on the property (more than $2.6 million), or what net proceeds will be made available for distribution upon the sale of the property (zero!).

Myra filed a motion for a TRO in state court in her divorce proceeding attempting to enjoin the sale of 2002 N. Mohawk, which was denied on August 28, 2008.

*C/A 23 LLC.*    Geoffrey formed CA/23 LLC to develop a condominium, development located in Chicago. (¶ 19.) Geoffrey is the manager and developer of the Project. At some point in time, Geoffrey "gave" the Class B membership interest in the C/A 23, LLC to the Aldine Trust for $1,000. (*Id.*)    According to Myra, the development is "projected" to yield "approximately" $2 million to the Aldine Trust after the class A members "get repaid." No allegations are made regarding when the transfer was made to the Aldine Trust, or whether the alleged projection of a $2 million pay-off remains viable in light of today's deteriorating real estate market.

*600 Fairbanks.* In 2004, almost two years before Myra filed the first divorce proceeding, Geoffrey was the developer and a "Class C" member in a limited liability company formed to develop a "multi-million-dollar, high-rise condominium located at 600 N. Fairbanks Court in Chicago." (¶ 13.) Geoffrey held his "Class C" membership interest as a nominee for the Aldine Trust in exchange for its agreement to provide "interim financing" for this "multi-million dollar, high-rise condominium." (¶ 14.)    In April, 2006, during the pendency of the first divorce proceeding, the Aldine Trust sold its interest in the Fairbanks Project for $1,770,888, and Geoffrey was replaced as the developer of the project. (¶¶ 14-15.)

*3546-48 Janssen, LLC and 3607-11 Bosworth, LLC.*  In January, 2005, almost one year before Myra filed the first divorce proceeding, the Aldine Trust acquired a Class B membership interest in 3607 N. Bosworth in exchange for its commitment to provide "capital" for the project. (¶ 17.) In August 2006, after the first divorce proceeding had been dismissed, the Aldine Trust received approximately $400,000. Likewise, the Aldine Trust received, after the first divorce proceeding was dismissed, checks totaling almost $1,000,000 in connection with the 3546 Janssen project. (*Id.*) Plaintiff alleges that the form of the relationship between Geoffrey, on the one hand, and the Aldine Trust, on the other hand, was similar to the Fairbanks transaction (¶ 18)

— which presumably means that the Aldine Trust received an interest in the project in exchange for its agreement to provide financial backing to the development.

## ARGUMENT

## I.    STANDARD FOR PLEADING FRAUD AND RICO

"The court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails 'to state a claim upon which relief can be granted.'"  *Matrix IV, Inc. v. American Nat'l Bank,* 2007 WL 853968, * 3 (N.D. Ill. 2007)(Marovich J.).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly,* ___ U.S. ____, ____ - ____, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)(internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true."  *Id.*  (internal citations omitted).  Further, as this Court observed in *Matrix IV,*

> certain allegations . . . must be stated with particularity.  For example, Federal Rule of Civil Procedure 9(b) mandates that "all averments of fraud" be "stated with particularity."  Fed.R.Civ.P. 9(b).  Rule 9(b) "is of course applicable to allegations of fraud in a civil RICO complaint.  *Goran v. New Vision Int'l, Inc.,* 156 F.3d 721, 726 (7th Cir. 1998).  In general, "allegations of fraud in a civil RICO complaint are subject to the heightened pleading standard of [Federal Rule of Civil Procedure] 9(b), which requires a plaintiff to plead all averments of fraud with particularity."  *Slaney v. International Amateur Athletic Found.,* 244 F.3d 580, 597 (7th Cir. 2001).

2007 WL 853968, * 3

## II.    COUNT I FOR FRAUD MUST BE DISMISSED

Myra alleges that Geoffrey, David and the Aldine Trust have engaged in fraud to divest Geoffrey and the marital estate of his assets and Myra of her share of the same.  While Myra's

fraud count speaks of a number of different alleged transfers, its sole focus is on the Mohawk Property. The entire prayer for relief seeks damages (of all types) only for the Mohawk Property transfer. (See Complaint pp. 9-10, prayer for relief)

Myra is familiar with the elements of a fraud claim as she lists them in paragraph 29 of her complaint: (1) a false statement of material fact; (2) the party making the statement knew it or believed it to be untrue; (3) the recipient had a right to rely on it and did so; (4) the statement was made for the purpose of inducing the recipient to act; and (5) an injury of the recipient by his reliance on the statement. "[Rule 9 (b)] requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Matrix IV, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, No 06 C 1661, 2007 WL 853968 at *5 (N.D. Ill March 15, 2007). Further, when multiple defendants are named, the complaint must inform each defendant of the specific fraudulent acts which constitute the basis for fraud against him. *See Hengel v. Hot 'n Now, Inc.*, 825 F.Supp. 1311, 1319 (N.D. Ill. 1993). Also, "[g]enerally, under Illinois law there is no action for promissory fraud; meaning that the alleged misrepresentations must be statements of present or preexisting facts, and not statements of future intent or conduct." *Ault v. C.C. Services, Inc.*, 232 Ill.App.3d 269, 271, 597 N.E.2d 720 (3d Dist. 1992). Where the statements of future intent or conduct are purely contingent, there can be no fraud. *See Perez v. Abbot Lab.*, 1995 U.S. Dist. LEXIS 2295 at * 35 (N.D. Ill. Feb. 14, 1995). Myra satisfies none of these pleading requirements.

The specific allegations of Myra's fraud complaint only show unfulfilled promises, not fraud. She states that in 2003 she and Geoffrey acquired the lot located at 2002 Mohawk. (¶ 20). She admits that David gave them a personal check for $300,000 to buy the lot. *Id.* She does not allege that she or Geoffrey spent any of their own money in buying the Mohawk Property. Myra

alleges that sometime in the Spring 2004: "Geoffrey promised [her] that they would obtain another residence and sell Mohawk to fund the purchase of the new residence." (¶ 21). She also states that Geoffrey told her "that he would sell Mohawk for their mutual benefit by including it in and along with his other real estate development projects." *Id.* As a result of his promises and urging, Myra quit-claimed her interest in the Mohawk Property to 2002 North Mohawk, LLC in July 2004. At some unspecified time thereafter, Geoffrey arranged for the Aldine Trust to own 99% of the Mohawk LLC and his company the Brixton Group to own the other 1%. *Id.* Then some four years later, Geoffrey contracted for the sale of the Mohawk Property for $3,000,000. (¶ 25).

These allegations do not sound like fraud, rather they sound like broken hopes in a bad real estate market. Geoffrey's promise to buy a new residence with funds from the sale of the Mohawk Property (which did not go under contract until April 2008 — some four years after Myra transferred her interest to 2002 Mohawk, LLC), was certainly beyond his control and completely contingent. His promise to package the sale of the Mohawk Property with other real estate at some time in the future again relied on the market place. Missing from the complaint are any allegations that Geoffrey somehow had such opportunities, and that he schemed to forego them and defraud Myra.[1] Further, Myra's allegation that the Aldine Trust ended up with 99% of the Mohawk LLC is not surprising, because the Trust now holds the interest for the monies David gave to Geoffrey and Myra to purchase the Mohawk Property. (¶ 26). Myra also pleads no facts which show fraudulent conduct on the part of any of the other defendants as she must do to survive a motion to dismiss. *See Hengel*, 825 F.Supp. at 1319. Accordingly, the complaint fails to allege fraud with sufficient particularity

---

[1]    Of course such allegations would be absurd, because not making a good real estate deal would be against Geoffrey's interests as well.

Equally fatal to Myra's fraud claim, is her failure to allege how she was damaged as a result of the alleged fraud. Under Illinois law, a plaintiff alleging fraud must plead specific facts showing how she suffered actual damages. *White v. DaimlerChrysler Corp.*, 368 Ill.App.3d 278, 287-88, 856 N.E.2d 542, 550 (1st Dist. 2006)(dismissing complaint where plaintiff failed to plead that he had suffered actual damages); *Yu v. IBM Corp.*, 314 Ill.App.3d 892, 896-87, 732 N.E. 2d 1173, 1177 (1st Dist. 2000)("Failure to state a sufficient facts to constitute a legally cognizable present injury or damage mandates dismissal."); *Bronstein v. Kalcheim & Kalcheim, Ltd.*, 90 Ill.App.3d 957, 959-60, 414 N.E.2d 96, 98 (1st Dist. 1980) (affirming motion to dismiss where plaintiff had not yet suffered any actual loss). Here, Myra pleads **no** facts showing how she has suffered actual damages by the sale of the Mohawk Property. Myra wants her share of the proceeds of the sale, but at the end of the day, she has not pleaded that there will be any proceeds after the payment of the debt, real estate commissions and other closing costs to which she will be entitled. If (as will be the case) there is nothing left after the sale of the Mohawk Property, Myra cannot allege that she suffered any actual damages and her fraud claim fails.

Further, while Myra's complaint describes a number of other asset transfers from Geoffrey to the Aldine Trust, none of these transfers are part of Myra's fraud claim, and Myra does not seek damages for these transfers in her fraud count. (*See* Complaint, p. 9-10, prayer for relief). It is not surprising that all of the other transfers fall outside the fraud claim. All of these alleged transfers of assets involved property owned by Geoffrey's various companies or in which he or his companies had an interest. (¶¶ 13,17-20). The Illinois Supreme Court has held that "the owner of property has an absolute right to dispose of his property during his lifetime in any manner as he sees fit, and he may do so even though the transfer is for the precise purpose of minimizing or defeating the statutory marital interest of the spouse in the property conveyed." *Johnson v. La Grange State Bank*, 73 Ill.2d 342, 357, 383 N.E.2d 185, 192 (1978).

Myra also complains that Geoffrey duped her into a reconciliation after she filed her initial petition for dissolution of marriage so that he would have time to withdraw and secret assets and income from the marital estate. (¶¶ 5-6). This allegation also suffers from many deficiencies. First, Myra's timing is off. According to her own allegations the Aldine Trust received the transfer from the 600 Fairbanks property while her initial divorce action still was pending. (¶¶ 13-14). The Aldine Trust acquired its interest in the 3607 N. Bosworth Property one year before Myra initiated her divorce proceeding. (¶ 17). As to the other properties, Myra fails to allege when the Aldine Trust obtained its interest. Therefore, nothing in the complaint supports her allegation.

Second, the mere pendency of her petition for dissolution of marriage did not restrict Geoffrey from transferring his assets. The Illinois Marriage and Dissolution Act provides that each spouse has a species of common ownership in the marital property which vests at the time dissolution proceedings are commenced and continues only during the pendency of the action. 750 ILCS 5/503 (e). The Act goes on to say, however, that: "Any such interest in marital property shall not encumber that property so as to restrict its transfer, assignment or conveyance by the title holder unless such title holder is specifically enjoined from making such transfer, assignment or conveyance." *Id.* Myra has not alleged that during her first divorce petition she obtained such an injunction. Accordingly, whether her divorce petition was pending really is irrelevant to these alleged transfers. At bottom, the fraud count solely focuses on the transfer of the Mohawk Property. For all of the reasons stated above, Myra's fraud claim should be dismissed with prejudice.

Finally, the complaint does not allege that Jerome Meyer, the trustee of the Aldine Trust, or David made any misrepresentations that Myra supposedly relied upon to her detriment. Myra thus fails to allege the most basic elements of fraud against these defendants.

### III.    COUNT III FOR RICO MUST BE DISMISSED

RICO "is a unique cause of action that is concerned with eradicating organized, long-term habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).  Plaintiff has filed this action in the mistaken belief that she can turn this domestic relations dispute into a RICO claim with its potential jackpot of punitive and trebled damages.  However, courts have regularly and routinely dismissed "garden variety" fraud claims such as this one on the grounds that they do not meet the exacting requirement for stating a RICO claim.  For the reasons stated herein, the RICO count must be dismissed.

### A.    PLAINTIFF DOES NOT ALLEGE THE ELEMENTS OF A §1962(B) VIOLATION.

Count III of the Complaint purports to state a cause of action for violations of §1962(b) and 1962(d) of RICO.  Section 1962(b) provides:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. §1962(b).

To have standing to assert a claim under §1962(b), courts have required plaintiff to allege an injury stemming not from the defendant's predicate acts (which is the basis of a §1962(c) claim) but from the defendant's acquisition or maintenance of an interest in, or control over, the pertinent enterprise.  *Midwest Grinding Co., Inc. v. Spitz*, 716 F.Supp. 1087, 1090-91 (N.D. Ill. 1989), *aff'd*, 1016 (7th Cir. 1992); *Matrix IV*, 2007 WL 853968 * 9 (N.D. Illinois)(Marovich, J.)(the purpose of §1962(b) is to prohibit "the takeover of legitimate businesses through racketeering, typically extortion or loansharking."), *citing, In re VMS Securities Litigation*, 752 F.Supp. 1373, 1403 (N.D. Ill. 1990)

In this case, Plaintiff weakly defines the "enterprise" as an "association between Geoffrey and Buzz created solely to further their fraudulent, illegitimate and unlawful scheme of hiding

assets…" (¶ 48.) Plaintiff asserts that her alleged injuries did not arise from the "defendant's acquisition or maintenance or control over the enterprise," as required to state a §1962(b) violation, but that her injuries arose "while Geoffrey and Buzz acted as part of an 'enterprise' within the meaning of RICO." (¶ 48.) Plaintiff's §1962(b) claim must be dismissed because she fails to allege an injury from the "acquisition or maintenance" of an "enterprise."

### B. PLAINTIFF FAILED TO IDENTIFY AN "ENTERPRISE" WITH SUFFICIENT SPECIFICITY.

Count III should also be dismissed for failing to identify the "enterprise" with sufficient specificity. The Seventh Circuit holds that "[a] RICO complaint must identify the enterprise." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995). Identification of the enterprise must necessarily include details about the structure of the enterprise. *Segreti v. Lome*, 147 F.Supp. 484, 486 (N.D. Ill 1990). "While a RICO enterprise can be formal or informal, some type of organizational structure is required." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000); *Richmond*, 52 F.3d at 645 ("The hallmark of an enterprise is a structure.") More specifically, a RICO enterprise must have an "ongoing 'structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making," with "goals separate from the predicate acts themselves." *Stachon*, 229 F.3d at 675. Stated somewhat differently, "[a] RICO enterprise must consist of more than a group of people who get together to commit a pattern of racketeering activity." *Phillips v. Sears Roebuck & Co.*, 2008 WL 2003186, * 2 (SD. Ill. 2008)(dismissing claim for failing to allege a RICO enterprise); *Segreti*, 747 F.Supp. at 486.

Here, Plaintiff has failed to allege the existence of an "enterprise" that contains a "structure" as required by the case law interpreting RICO. All that Plaintiff alleges is that the father and son had an "association" created to further their alleged "scheme," and that the

"enterprise" "engaged in and affected interstate commerce…" Such allegations are insufficient to allege the existence of an "enterprise" for purposes of stating a RICO claim.

### C.    PLAINTIFF FAILS TO IDENTIFY A "PERSON" WHO ENGAGED IN RACKETEERING ACTIVITY EVEN IN CONCLUSORY TERMS.

Under RICO, a plaintiff must allege and prove the existence of two distinct entities: "(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Wooley v. Jackson Hewitt, Inc.*, 540 F.Supp.2d 964, 975 (N.D. Ill. 2008)(dismissing lawsuit for, among other reasons, failing to identify a "person" separate from the "enterprise"). In this case, Plaintiff does not identify the "person" who engaged in the racketeering activity. At best, from reading the complaint as a whole, it appears that Plaintiff is improperly alleging that David and Geoffrey are both the "enterprise" and the "person" who engaged in the racketeering activity. Because the defendants cannot be both the "enterprise," and the "person," Count III must be dismissed with prejudice.

### D.    PLAINTIFF HAS FAILED TO ALLEGED A "PATTERN" OF RACKETEERING.

A pattern of racketeering activity is established where "the racketeering predicates are related, and . . . they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893 (1989). In *H.J. Inc. v. Northwestern Bell Telephone Co.*, the Supreme Court held that, a RICO plaintiff "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." 492 U.S. 229, 239, 109 S.Ct. 2893, 2900 (1989); *see also Flynn v. Corus Bank*, 1998 U.S. Dist. LEXIS 19130, at *11 (N.D. Ill. Dec. 1, 1998). Continuity "is both a closed- and open-ended period concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241, 109 S.Ct. at 2901.

1.    **Plaintiff has Failed to Allege Close-Ended Continuity.**

To determine whether closed-ended continuity has been established, courts consider four factors, often referred to as the *Morgan* factors, to evaluate the "pattern" requirement under the RICO statute: (1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986). In this case, every one of the factors weigh against the Court finding that plaintiff has alleged a "pattern" of racketeering sufficient to state a RICO claim.

a.    **Plaintiff Has Not Alleged Sufficient Number Of Predicate Acts.**

Plaintiff has not alleged sufficient allegations regarding the number or nature of the alleged "predicate" acts. In conclusory allegations, Plaintiff alleges that "Geoffrey and Buzz" have on "multiple occasions" engaged in "telephonic wire communications" for the "purpose of executing [a] scheme" to defraud Myra. (¶ 53.) Plaintiff further alleges that Geoffrey and Buzz "have caused to be sent correspondence or other documents" through the US mail as part of their scheme to defraud. (¶ 51.) Such allegations are not pled with sufficient specificity to satisfy the pleading requirements of a RICO claim. Further, all of the predicate acts were supposedly done to advance a single episode of alleged fraud, *i.e.*, to transfer the Mohawk residence out of the "marital estate." Under this circumstance, where defendants supposedly engaged in "multiple" acts of wire or mail fraud to further a single scheme to defraud, weighs in favor of finding that no RICO claim exists. *See Jones v. Lamp*, 845 F.2d 755, 757 (7th Cir. 1988)("multiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern"); *see also North American Processing Co. v. Crown Meat Co.*, 1994 WL 280082, at *5 (N.D. Ill. 1994)("Were the law otherwise, virtually any commercial dispute could be roped into federal court on the premise that the defendants use the mails and telephones").

- 12 -

**b.    Plaintiff Identifies Only Herself As An Alleged Victim.**

Myra identifies one purported victim: herself. This factor weighs in favor of finding no "pattern" of racketeering. *Meyer v. Mooshol*, 188 F.Supp.2d 936, 942 (N.D. Ill. 2002) (dismissing case where only one victim alleged).

**c.    Plaintiff Identifies Only One Alleged Scheme.**

Plaintiff claims that only one scheme exists: a scheme to defraud Myra by allegedly transferring assets from the "marital estate." The Seventh Circuit has held that the existence of a single scheme weighs strongly against finding a pattern of racketeering. *See, e.g., Talbot v. Robert Matthews Distrib. , Co.*, 961 F.2d 654, 663 (7th Cir. 1992)(multiple acts of mail fraud occurring in a single scheme to defraud do not constitute a RICO pattern); *Olive Can Co., Inc.*, 906 F.2d 1147, 1151 (7th Cir. 1990)(no pattern where single scheme involved multiple acts of mail fraud).

**d.    Plaintiff Identifies One Claimed Injury.**

Plaintiff identifies four alleged injuries in her RICO count: the transfer of the Mohawk property out of the "marital estate," (¶ 22) and transfers of money from the Fairbanks Project (¶ 14), the Bosworth Project (¶ 16), the Jansen Project (¶ 18), and a transfer of equity in an ongoing development called CA/23 (¶ 19).[2] While Plaintiff has identified separate real estate developments involving her father-in-law and husband, Plaintiff did not suffer distinct injuries as a result of the transfers. Rather, "the injuries stemmed from a single scheme to defraud involving similar predicate acts." *Mooshol*, 188 F.Supp.2d at 936. Consequently, the "alleged injuries are not distinct." *Id.* (citations omitted). Further, even if plaintiff had alleged "distinct injuries," which she does not, Courts have held that "where a plaintiff alleges distinct injuries to a number of victims as the result of a single scheme and a limited variety of predicate acts, no

---

[2]    That transfer was made in 2004, some four years before the filing of this complaint, and two years before the filing of the first divorce petition.

pattern of racketeering activity is shown." *Pucci v. Litwin*, 828 F.Supp. 1285, 1295 (N.D. Ill. 1993).

In summary, where, as here, a complaint alleges only a single fraudulent scheme, a single victim, and a single injury, it fails to establish a pattern of racketeering activity sufficient to state a RICO claim. *Clerk v. Robert W. Baird Co., Inc.*, 142 F.Supp.2d 1065, 1072 (N.D. Ill. 2001).

### 2. Plaintiff Also Fails to Allege "Open-Ended Continuity."

Open-ended continuity is present when: (1) a specific threat of repetition exists; (2) the predicates are a regular way of conducting an ongoing legitimate business; or (3) the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. *Arenson v. Whitehall Convalescent & Nursing Home*, 880 F.Supp. 1202, 1210 (N.D. Ill. 1995); *Flynn*, 1998 U.S. Dist. LEXIS 19130, at *12. Here, Myra does not allege a pattern that amounts to "open-ended" continuity. The complaint does not contain allegations of "past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241, 109 S.Ct. at 2901.

### E. THE ALLEGED ACTS OF MAIL AND WIRE FRAUD ARE NOT PLED WITH SPECIFICITY.

Rule 9(b) applies to allegations of mail and wire fraud and by extension to RICO claims that rest on predicate acts of mail and wire fraud. *See, e.g., Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327-8 (7th Cir. 1994)(affirming dismissal of RICO complaint with prejudice). Thus, "loose references to mailings and telephone calls" in furtherance of a purported scheme to defraud will not do. *Id., citing, R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F.Supp. 1499, 1516 (N.D. Ill. 1990). Instead, the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications. *Jepson*, 34 F.3d at 1328. These details are mandated not only by Rule 9(b), but by the very nature of a RICO claim. *Id.; see also Hernandez v. Ballesteros*, 333 F.Supp.2d 6,

11 (D. P.R. 2004)("[A]" complaint that alleges numerous instances of wire fraud without specifying which defendant made use of the wires on those particular occasions, the dates of use, as well as the exact frequency of such use did not sufficiently plead predicate acts under RICO."). Moreover, to state a RICO claim based on wire fraud, the plaintiff must allege that the transmissions occurred in interstate commerce. *See* 18 U.S.C. 1343; *Arenson v. Whitehall Convalescent & Nursing Home*, 880 F.Supp. 1202, 1212-13 (N.D. Ill. 1995)(dismissing RICO complaint to the extent it relied on wire fraud predicate acts because complaint did not plead interstate communications); *Hernandez*, 333 F.Supp. 2d at 12 (dismissing RICO claim based on alleged wire fraud because complaint did not allege the use of interstate communication lines); *Bajorat v. Colombia-Breckenridge Development Corp.*, 944 F. Supp. 1371, 1381 (N.D. Ill. 1996) (dismissing RICO count where complaint contained vague allegations of wire fraud on "numerous occasions" and did not include "which specific defendant made use of the wires on each particular occasion, the dates of such use, as well as the exact frequency of such use.").

In *Jepson*, the Seventh Circuit affirmed dismissal of a RICO complaint with prejudice for failure to meet these pleading standards. In so doing, the court stated:

> The allegations concerning the mail and wire communications with Jepson's customers are the most glaringly deficient. Although the amended complaint identifies the general nature of the purported misrepresentations made to these customers, no detail beyond that is supplied. The complaint simply alleges 'multiple instances' of Makita using the mails and wires to contact 'existing and potential customers of Jepson and numerous other Taiwanese manufacturers and importers and distributors of electric power tools and accessories from Taiwan, to induce them not to purchase Jepson, or other Taiwanese electric power tools and accessories.'

34 F.3d at 1328.

Similarly, here, Myra alleges that defendants engaged in racketeering activity by committing acts of mail and wire fraud. (¶ 49) However, Myra has not alleged mail and wire fraud with sufficient particularity. As to mail fraud, the complaint alleges that "as part of their

scheme to swindle Myra of her rightful share of the marital estate, on information and belief, both Geoffrey and Buzz have caused to be sent correspondence or other documents . . . by the United States Postal Service." (¶ 51). As to wire fraud, the complaint alleges "on information and belief" that Geoffrey and Buzz have, "on multiple occasions engaged in telephonic wire communications with one another, as well as with third parties for the . . . purpose of executing [their scheme]. Geoffrey has on multiple occasions both before and since the execution of the quit claim deed by Myra, engaged in telephonic wire communications with Myra wherein he falsely stated that he would sell Mohawk for their mutual benefit. . . ." (¶ 53). As in *Jepson*, these general allegations are insufficient because they fail to plead the time, place and content of each alleged predicate act. 34 F.3d at 1328. Moreover, the complaint does not allege that any of the alleged wire communications were interstate, a necessary element for wire fraud. *Arenson*, 880 F.Supp. at 1212-13; *Hernandez*, 333 F.Supp.2d at 12. Accordingly, Count II should be dismissed because it does not allege a pattern of racketeering based on mail and wire fraud.

## IV.    COUNT V FOR UNJUST ENRICHMENT MUST BE DISMISSED.

To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 545 N.E.2d 672, 679 (1989). In other words, to successfully plead unjust enrichment, a plaintiff must allege three things: that (1) the defendant received a benefit from plaintiff (2) to the plaintiff's detriment, and (3) the defendant's retention of that benefit violates the principles of justice, equity, and good conscience. In this case, Plaintiff has failed to allege that the benefit she seeks to recover proceeded directly from her to Defendants. *Id.* at 161. Nor has she alleged that she seeks to recover a benefit that has been transferred by a third party to Defendants, where: (1) the

- 16 -

benefit should have been give to Plaintiff, but the third party mistakenly gave it to Defendants instead; (2) Defendants procured the benefit from the third party through wrongful conduct; or (3) the Plaintiff for some other reason has a better claim to the benefit than Defendants. *Id.* at 161-62. Instead, all Plaintiffs has averred is an incomprehensible allegation in Paragraph 68.

## V.     COUNT VI FOR CONSTRUCTIVE TRUST MUST BE DISMISSED

A "constructive trust" is an equitable remedy, not an independent cause of action. *See, e.g., Fujisawa Pharmaceutical Co. v. Kapoor*, 16 F.Supp.2d 941, 952 (N.D. Ill. 1998)(dismissing constructive trust claim)(applying Illinois law); *Pucci v. Litwin*, 828 F.Supp. 1285, 1300 (N.D. Ill. 1993)(holding that constructive trust is a remedy, not an independent cause of action), *citing, Anderson v. Lybeck*, 15 Ill.2d 227, 154 N.E.2d 259 (1958). Consequently, Count VI must be dismissed for failing to state a claim.

## VI.     COUNT II FOR CONSPIRACY MUST BE DISMISSED

Because the Court should dismiss all of the tort counts, Plaintiff cannot assert a stand alone claim for conspiracy. *See B.F.G. Blackman,* 2008 U.S. Dist. LEXIS 60585, at * 8 (N.D. Ill. July 21, 2008)("A conspiracy claim cannot stand when the underlying claim is dismissed."); *U.S. v. All Meat & Poultry Products,* 470 F.Supp. 2d 823, 829 (2007)("[A] conspiracy claim must be dismissed if the underlying claim has been dismissed."); *Galinski v. Kessler*, 134 Ill.App.3d 602, 609, 480 N.E.2d 1176, 1181 (1st Dist. 1985)("The conspiracy to commit an act is not actionable at law unless the underlying act itself constitutes wrongful or tortuous conduct").

## VII.     COUNT IV FOR FRAUDULENT CONVEYANCE MUST BE DISMISSED

Count IV purports to state a claim against Defendants under the Uniform Fraudulent Transfer Act, 740 ILCS 160/1, *et seq*. (the "Act"). Count IV does not allege a particular section of the Act that was violated. However, given the conclusory allegation of actual intent, presumably Count IV is brought under Section 5(a) of the Act, which provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay or defraud any creditor of the debtor. . . .

740 ILCS 160/5(a).  Myra claims she was a "creditor" and Geoffrey was a "debtor" under the Act, and that the transfer of the properties from Geoffrey to Buzz, the Aldine Trust and the LLC constituted a fraudulent transfer or transfers under the Act.  (¶¶60, 63, 65).  She asserts that Defendants transferred the properties "with an actual intent to hinder, delay, or defraud Myra's marital interest in or claim to" the properties.  (¶62).

Count IV fails to plead a claim under the Act because: (1) Geoffrey was not a debtor; (2) Myra was not a creditor; (3) the transfers are not alleged in sufficient detail; and (4) the intent to defraud is not pled with particularity.  First, under the Act, Geoffrey was not a "debtor" and Myra was not a "creditor."  The Act defines "debtor" as "a person who is liable on a claim."  740 ILCS 160/2(f).  A "creditor" means a "person who has a claim, including a claim for past-due child support."  740 ILCS 160/2(d).  The term "claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  740 ILCS 160/2(c).  The complaint does not allege that Geoffrey was liable on a claim to Myra or that Myra had a claim — a right to payment — against Geoffrey at the trial, Defendant alleged transfers.

Myra instead contends that she was a creditor and Geoffrey was a debtor by virtue of their marriage and the petition for dissolution that was filed.  However, marriage does not transform spouses into debtors and creditors and neither does a petition for dissolution of marriage.  *See Reed v. Reed,* 747 N.W.2d 18, 23 (Neb. 2008)(spouse's right to equitable distribution of marital estate is not a "right to payment" under the UFTA, and therefore spouse was not a creditor.)  Indeed, under the Illinois Marriage and Dissolution Act, spouses are free to

transfer and convey their property as they see fit unless they are specifically enjoined from doing

so.  The Illinois Marriage and Dissolution Act states:

> Each spouse has a species of common ownership in the martial property which
> vests at the time dissolution proceedings are commenced and continues only
> during the pendency of the action.  Any such interest in marital property shall not
> encumber that property so as to restrict its transfer, assignment or conveyance by
> the title holder unless such title holder is specifically enjoined from making such
> transfer, assignment or conveyance.

750 ILCS 5/503(e).  Courts have explained the rights of spouses to marital property as follows:

"insofar as the statutory marital right is concerned, the owner. . . in the lifetime of both spouses,

has the absolute right actually and really to dispose of his or her own property in any manner he

or she sees fit without the concurrence or even the knowledge of the now surviving spouse.  And,

moreover, he or she may do so even though he or she does so for the purpose of thereby

minimizing or completely defeating the interest which the now surviving spouse would

otherwise have obtained by reason of the statutory marital right."  *Toman v. Svoboda*, 39 Ill.

App. 3d 394, 349 N.E.2d 668 (1st Dist. 1976).  Hence, there is no basis in law for Myra's

conclusory allegation that she is a "creditor" and Geoffrey is a "debtor" simply because they

were married and a subsequent petition for dissolution of marriage was filed.

Moreover, the complaint lacks any details about the alleged fraudulent transfers.  A claim

for fraudulent transfer under the Act must be pled with particularity.  *Zimmerman v. Paulson,*

524 F.Supp.2d 1077, 1080 (N.D. Ill. 2007).  Most strikingly, the complaint does not allege that

*Geoffrey* transferred his assets to Buzz, the Aldine Trust or the LLC.  For example, with regard

to the Fairbanks project, the complaint merely alleges that the Aldine Trust received $1,770,880

for its "interest" in the project.  (¶14).  The complaint does not allege that *Geoffrey* was the

transferor.[3]  Similarly, the complaint alleges that the Aldine Trust received approximately

---

[3]    Indeed, the actual transferors in that case were Myra's father, Gary A. Rosenberg, and a company
owned by Myra's father and Myra herself.

- 19 -

$400,000 in income for its $1,000 investment in the Bosworth project. (¶17). Again, absent are any allegations that *Geoffrey* was the transferor. (*See also* ¶18). Accordingly, for all of these reasons, the Uniform Fraudulent Transfer Act claim should be dismissed with prejudice.

## VIII.  THE FRAUDULENT CONVEYANCE AND RICO ACTIONS ARE TIME-BARRED

Myra alleges that the transfers of the "properties detailed above," "constituted a fraudulent transfer or transfers within the meaning of the Uniform Fraudulent Transfer Act," and then cites the entire statute. (¶ 65.) Assuming, for the sake of argument, that Myra is attempting to state a claim under section 5 (based on her allegations that the Defendants acted with an intent to "hinder, delay or defraud" her), such an action is time-barred because it was not filed within four years of the date of the transfer as required under the UFTA, 740 ILCS 160/10(a)-(b). According to Myra, she quit-claimed her interest in the Mohawk property to Geoffrey in "July, 2004," (¶ 32); she then filed her action against Defendants in state court on August 14, 2008. On the face of her complaint, she has pled herself out of court with respect to her UFTA claim. *Barry v. Land O' Lakes Municipal Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004)(statute of limitations may be decided on a motion to dismiss where the allegations of the complaint show that the case is time-barred); *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003)(a plaintiff "may plead himself out of court by alleging (and thus admitting) the ingredients of a defense.") Likewise, the statute of limitations for causes of action arising under civil RICO is four years. *See Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). Accordingly, to the extent that the RICO claim is based upon the transfer of the Mohawk property, it too should be time-barred.

IX.    **MYRA SIGNED RELEASES THAT BAR CLAIMS AGAINST JEROME THAT AROSE ON OR BEFORE JANUARY 1, 2008**

Myra complains about transfers that were made to the Aldine trust prior to January 1, 2008. (¶¶ 14, 17, 18, 19). Any claims against Jerome arising out of these transfers are barred by three General Releases she and others (including Geoffrey) signed on January 1, 2006, January 1, 2007, and January 1, 2008 (the "Releases"). Each year, Jerome, in his capacity as Trustee of the Aldine Trust, requested David as sole beneficiary and other family members to sign a General Release in exchange for his continued service as Trustee. Myra, David, Geoffrey and others signed the Releases, which state:

> [R]elease and forever discharge . . . JEROME H. MEYER . . . of and from all manner of actions, cause and causes of action, suits, debt, dues, sums of money, accounts . . . and particularly, without limiting the generality of the foregoing, any and all claims arising out of his acts as Trustee of the **ALDINE TRUST**, which they now have against JEROME H. MEYER, or which their heirs, executors, personal representatives, and assigns hereafter can shall or may have, for, upon, or by reason of any matter, cause of thing whatsoever, on or at any time prior to the date of these Presents.

(True and accurate copies of the Releases are attached as Exhibit A).

Federal law governs the validity of releases of federal causes of action. *Village of Fox River Grove v. Grayhill, Inc.*, 806 F.Supp. 785, 793 (N.D. Ill. 1992). However, federal courts look to state law to interpret a release as long as the state law is not hostile to federal interests. *Id.* Under Illinois law, where a written release is clear and explicit, the court should determine the meaning and intention of the parties from the face of the document and enforce the release as written. *Id.* Construction of the instrument where no ambiguity exists is a matter of law. *Id.* Here, the Release language clearly and unambiguously releases Myra's claims against Jerome Meyer, as trustee of the Aldine Trust, to the extent the claims arise out of transfers that were

- 21 -

made into the Aldine Trust on or before January 1, 2008. The Court should dismiss the complaint accordingly.[4]

## VII.    PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES MUST BE STRICKEN

The Illinois Supreme Court articulated the standard for awarding punitive damages in *Loitz v. Remington Arms Co.*, 138 Ill.2d 404 (1990): "[s]ince the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate — which is to say, *conduct involving some element of outrage similar to that usually found in crime.*" *Id.* at 415-16 (emphasis added). The conduct must be outrageous, either because the defendant's acts are done "with an evil motive or because they are done with reckless indifference to the rights of others." *Id.* The statements and conduct alleged by Plaintiff dos not begin to rise to the exacting standard set forth by the Illinois Supreme Court. *See Spires v. Mooney Motors, Inc.*, 229 Ill.App.3d 917, 924, 595 N.E.2d 225, 229 (4th Dist. 1992)(affirming trial court ruling that complaint did not state claim for punitive damages, where allegations were that defendant failed to warn plaintiff of machine's history of malfunctions). Because Plaintiff's allegations do not clear the necessary threshold for meriting punitive damages, and because punitive damages are not favored in Illinois, (*see Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 188 (1978)), the requests for punitive damages must be stricken. Furthermore, Plaintiff did not seek leave of the Court before filing her request for punitive damages as required under 735 ILCS 5/2-607.1, *see also LaSalle Nat'l Bank v. Willis*, 378 Ill.App.3d 307, 323, 880 N.E.2d 1075, 1088 (1st Dist. 2007)(affirming

---

[4]    Pursuant to Fed. R. Civ. P. 12(d), the court may convert this motion into a motion for summary judgment to the extent it relies on materials outside the pleadings for dismissal. *See Schroeder v. Lufthansa German Airlines*, 1987 U.S. Dist. LEXIS 9496, at *7 (N.D. Ill. Oct. 15, 1987)(converting 12(b)(6) motion to dismiss to summary judgment motion and granting summary judgment based on release).

dismissal of action where plaintiff failed to obtain leave of the Court before filing claim for punitive damages).[5]

**FOR THE FOREGOING REASONS**, Defendants David W. Ruttenberg, Geoffrey Ruttenberg, and 2002 North Mohawk, LLC respectfully request that that Court dismiss Plaintiff's Complaint with prejudice, or alternatively, that the Court dismiss the RICO Count with prejudice, and dismiss the common law counts without prejudice and with leave to re-file the same in state court.

Dated:  September 3, 2008

Respectfully submitted,

**DAVID W. RUTTENBERG, GEOFFREY RUTTENBERG, 2002 NORTH MOHAWK, LLC**
By:    /s/ John D. Burke
    One of Their Attorneys


**JEROME MEYER, in his capacity as trustee of the Aldine Trust**
By:    /s/ John Chen
    One of His Attorneys

John D. Burke (ARDC No. 06203918)
**ICE MILLER LLP**
200 West Madison, Suite 3500
Chicago, Illinois 60606
(312) 726-8148

Tom Hayes (ARDC No. 6280179)
**ICE MILLER LLP**
2300 Cabot Drive, Suite 455
Lisle, Illinois 60532
(630) 857-7616

John Chen (ARDC No. 06193906)
Kristi Nelson (ARDC No. 06229943)
**Chen Nelson Roberts Ltd**.
203 N. LaSalle St., 15th Floor
Chicago, Illinois 60601
(312) 782-5630

---

[5]     One court has observed that 2-607.1 is a procedural rather than a substantive rule of law, and thus not binding on federal courts. *Belkow v. Celotex Corp.,* 722 F.Supp. 1547 (N.D. Ill. 1989).

- 23 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served via electronic mail and U.S. mail, proper postage prepaid, on the 3rd day of September, 2008, upon:

>   David I. Grund
>   Grund & Leavitt, P.C.
>   812 North Dearborn Street
>   Chicago, Illinois 60610-3317

_____ /s/ John D. Burke_____
        John D. Burke

C/70096.2

# EXHIBIT A

# GENERAL RELEASE

KNOW ALL MEN BY THESE PRESENTS, that DAVID W. RUTTENBERG, individually and as Custodian for Jacob C. Ruttenberg, CHRISTINE L. RUTTENBERG, individually and as Custodian for Jacob C. Ruttenberg, GEOFFREY W. RUTTENBERG, individually and as Custodian for Lily R. Ruttenberg and Alexander D. Ruttenberg, MYRA RUTTENBERG, individually and as Custodian for Lily R. Ruttenberg and Alexander D. Ruttenberg, ALISA R. KAGAN, individually and as Custodian for Samuel A. Kagan, Joseph S. Kagan and Benjamin R. Kagan, and IRVING L. KAGAN, individually and as Custodian for Samuel A. Kagan, Joseph S. Kagan and Benjamin R. Kagan, of Chicago, Illinois, as beneficiaries, or contingent beneficiaries, of the **ALDINE TRUST**, dated October 1, 1991, for and in consideration of Trustee, JEROME H. MEYER, continuing to act during the calendar year beginning January 1, 2006, do hereby remise, release and forever discharge and, by these Presents, do for themselves, their heirs, executors, personal representatives and assigns, remise, release and forever discharge the said JEROME H. MEYER, his heirs, executors, personal representatives, and assigns, of and from all manner of actions, cause and causes of action, suits, debt, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, and particularly, without limiting the generality of foregoing, any and all claims arising out of his acts as a Trustee of the **ALDINE TRUST**, which they now have against JEROME H. MEYER, or which their heirs, executors, personal representatives, and assigns hereafter can shall or may have, for, upon, or by reason of any matter, cause of thing whatsoever, on or at any time prior to the date of these Presents.

IN WITNESS WHEREOF, the undersigned have caused this release to be executed as of the 1st day of January 2006.

_____
DAVID W. RUTTENBERG, individually and as Custodian for Jacob C. Ruttenberg

_____
CHRISTINE L. RUTTENBERG, individually and as Custodian for Jacob C. Ruttenberg,

_____
GEOFFREY W. RUTTENBERG, individually and as Custodian for Lily R. Ruttenberg and Alexander D. Ruttenberg,

_____
MYRA RUTTENBERG, individually and as Custodian for Lily R. Ruttenberg and Alexander D. Ruttenberg

_____
ALISA R. KAGAN, individually and as Custodian for Samuel A. Kagan, Joseph S. Kagan and Benjamin R. Kagan

_____
IRVING L. KAGAN, individually and as Custodian for Samuel A. Kagan, Joseph S. Kagan and Benjamin R. Kagan

F:\Buzz\misc\GENERAL RELEASE ALDINE TRUST, 1-1-06.doc

# GENERAL RELEASE

KNOW ALL MEN BY THESE PRESENTS, that DAVID W. RUTTENBERG, individually and as Custodian for Jacob C. Ruttenberg, CHRISTINE L. RUTTENBERG, individually and as Custodian for Jacob C. Ruttenberg, GEOFFREY W. RUTTENBERG, individually and as Custodian for Lily R. Ruttenberg and Alexander D. Ruttenberg, MYRA RUTTENBERG, individually and as Custodian for Lily R. Ruttenberg and Alexander D. Ruttenberg, ALISA R. KAGAN, individually and as Custodian for Samuel A. Kagan, Joseph S. Kagan and Benjamin R. Kagan, and IRVING L. KAGAN, individually and as Custodian for Samuel A. Kagan, Joseph S. Kagan and Benjamin R. Kagan, of Chicago, Illinois, as beneficiaries, or contingent beneficiaries, of the **ALDINE TRUST**, dated October 1, 1991, for and in consideration of Trustee, JEROME H. MEYER, continuing to act during the calendar year ending December 31, 2007, do hereby remise, release and forever discharge and, by these Presents, do for themselves, their heirs, executors, personal representatives and assigns, remise, release and forever discharge the said JEROME H. MEYER, his heirs, executors, personal representatives, and assigns, of and from all manner of actions, cause and causes of action, suits, debt, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, and particularly, without limiting the generality of foregoing, any and all claims arising out of his acts as a Trustee of the **ALDINE TRUST**, which they now have against JEROME H. MEYER, or which their heirs, executors, personal representatives, and assigns hereafter can shall or may have, for, upon, or by reason of any matter, cause of thing whatsoever, on or at any time prior to the date of these Presents.

IN WITNESS WHEREOF, the undersigned have caused this release to be executed as of the 1st day of January 2007.

_____
DAVID W. RUTTENBERG, individually and as Custodian for Jacob C. Ruttenberg

_____
CHRISTINE L. RUTTENBERG, individually and as Custodian for Jacob C. Ruttenberg,

_____
GEOFFREY W. RUTTENBERG, individually and as Custodian for Lily R. Ruttenberg and Alexander D. Ruttenberg,

_____
MYRA RUTTENBERG, individually and as Custodian for Lily R. Ruttenberg and Alexander D. Ruttenberg

_____
ALISA R. KAGAN, individually and as Custodian for Samuel A. Kagan, Joseph S. Kagan and Benjamin R. Kagan

_____
IRVING L. KAGAN, individually and as Custodian for Samuel A. Kagan, Joseph S. Kagan and Benjamin R. Kagan

## GENERAL RELEASE

KNOW ALL MEN BY THESE PRESENTS, that DAVID W. RUTTENBERG, individually and as Custodian for Jacob C. Ruttenberg, CHRISTINE L. RUTTENBERG, individually and as Custodian for Jacob C. Ruttenberg, GEOFFREY W. RUTTENBERG, individually and as Custodian for Lily R. Ruttenberg and Alexander D. Ruttenberg, MYRA RUTTENBERG, individually and as Custodian for Lily R. Ruttenberg and Alexander D. Ruttenberg, ALISA R. KAGAN, individually and as Custodian for Samuel A. Kagan, Joseph S. Kagan and Benjamin R. Kagan, and IRVING L. KAGAN, individually and as Custodian for Samuel A. Kagan, Joseph S. Kagan and Benjamin R. Kagan, of Chicago, Illinois, as beneficiaries, or contingent beneficiaries, of the ALDINE TRUST, dated October 1, 1991, for and in consideration of Trustee, JEROME H. MEYER, continuing to act during the calendar year ending December 31, 2008, do hereby remise, release and forever discharge and, by these Presents, do for themselves, their heirs, executors, personal representatives and assigns, remise, release and forever discharge the said JEROME H. MEYER, his heirs, executors, personal representatives, and assigns, of and from all manner of actions, cause and causes of action, suits, debt, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, and particularly, without limiting the generality of foregoing, any and all claims arising out of his acts as a Trustee of the ALDINE TRUST, which they now have against JEROME H. MEYER, or which their heirs, executors, personal representatives, and assigns hereafter can shall or may have, for, upon, or by reason of any matter, cause of thing whatsoever, on or at any time prior to the date of these Presents.

IN WITNESS WHEREOF, the undersigned have caused this release to be executed as of the 1st day of January 2008.

_____
DAVID W. RUTTENBERG, individually and as Custodian for Jacob C. Ruttenberg

_____
CHRISTINE L. RUTTENBERG, individually and as Custodian for Jacob C. Ruttenberg,

_____
GEOFFREY W. RUTTENBERG, individually and as Custodian for Lily R. Ruttenberg and Alexander D. Ruttenberg,

_____
MYRA RUTTENBERG, individually and as Custodian for Lily R. Ruttenberg and Alexander D. Ruttenberg

_____
ALISA R. KAGAN, individually and as Custodian for Samuel A. Kagan, Joseph S. Kagan and Benjamin R. Kagan

_____
IRVING L. KAGAN, individually and as Custodian for Samuel A. Kagan, Joseph S. Kagan and Benjamin R. Kagan