UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MYRA A. RUTTENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 08 C 4898 |
| v. | ) | |
| | ) | Judge George M. Marovich |
| GEOFFREY W. RUTTENBERG, | ) | |
| DAVID RUTTENBERG, | ) | |
| JEROME MEYER, individually and in | ) | |
| his capacity as trustee of the Aldine Trust, | ) | |
| THE ALDINE TRUST, and | ) | |
| 2002 NORTH MOHAWK, LLC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Myra A. Ruttenberg ("Myra") filed in the Circuit Court of Cook County a complaint against defendants Geoffrey W. Ruttenberg ("Geoffrey"), David Ruttenberg ("David"), Jerome Meyer ("Meyer"), the Aldine Trust and 2002 North Mohawk, LLC. Defendants removed the case here on the basis of federal question jurisdiction. Myra then filed an amended complaint. In her amended complaint, Myra asserted that defendants violated the Racketeer Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. § 1962, committed common-law fraud, violated the Uniform Fraudulent Transfer Act, 740 ILCS 160/2(d), and were unjustly enriched. Defendants move to dismiss the amended complaint.

**I.      Background**

The Court takes as true the allegations in plaintiff's amended complaint.

Plaintiff Myra and defendant Geoffrey were married in 1998. Geoffrey (like his father, defendant David) is a real-estate developer. Geoffrey has achieved some economic success in

real estate development. For example, Geoffrey and Myra's tax return for the year 2004 reflects adjusted gross income of $788,262.00. Geoffrey does his real estate development through Brixton Group, LLC, his wholly-owned corporation.

The marriage was less successful than the real estate business. Myra filed for divorce in December 2005. At that point, according to plaintiff's allegations, Geoffrey and David launched a scheme to hide Geoffrey's income and assets so that Myra would get significantly less money as a result of the divorce. First, Geoffrey pretended to reconcile with Myra. In May 2006, she dismissed her divorce suit. By January 2008, Geoffrey had filed for divorce.

In the meantime, Geoffrey and David worked together to transfer Geoffrey's income and wealth to the Aldine Trust, of which David is the beneficiary. The idea was that the financial rewards for Geoffrey's real estate efforts would go not to Geoffrey or Brixton but to the Aldine Trust. Plaintiff alleges that defendant Meyer, who is the trustee for the Aldine Trust, knowingly cooperated with Geoffrey and David's scheme.

The complaint outlines several examples of how the scheme played out. In 2004, Geoffrey and Brixton formed 600 Fairbanks LLC to develop a high-rise condominium building. Geoffrey was to have a 41.71% interest, and the developer profits were expected to be more than $27,000,000.00. When Geoffrey sold his interest in the project, the proceeds ($1,770,880.00) went to the Aldine Trust, which received the money in April 2006. With respect to the sale, Geoffrey used the mail to consult his father on where the proceeds should go, and David used the mail to negotiate the sale as Geoffrey's attorney.

In January 2005, the Aldine Trust was given a 100% Class B interest in 3607-11 Bosworth LLC in exhange for $1,000. Although Brixton Group was the developer and manager

on the project, $400,000.00 of the proceeds went to the Aldine Trust. The Aldine Trust was also given a 100% Class B interest in 3546-48 Janssen, LLC in exchange for nothing. The Aldine Trust received $997,625.00 of the proceeds on that project.

In April 2006, Geoffrey formed CA/23, LLC to develop a high-rise condominium building at 23 North Aberdeen Street. In May 2006, CA/23, LLC borrowed nearly $4.5 million with Geoffrey's personal guarantee. Geoffrey spends most of his time developing this project, but he has received no compensation. Nor is he scheduled to. Instead, he sold the entire equity interest to the Aldine Trust, which is expected to receive approximately $2,000,000.00. Geoffrey used the mails to form CA/23, LLC (in that he mailed the Articles of Incorporation to the Illinois Secretary of State's office) and to apply for its federal tax identification number.

In December 2006, Geoffrey formed the Grace/Marshfield, LLC to develop a 16-unit condominium building at 1622 W. Grace. In April 2007, Grace/Marshfield, LLC borrowed more than $3,000,000.00 with Geoffrey's personal guarantee. The funds were wire-tranferred. The development was managed by Brixton Group, but the Aldine Trust bought the ownership share for $1,000.00. Although the development is not finished, the Aldine Trust is expected to obtain a substantial profit.

The final real estate project with which plaintiff takes issue is located at 2002 N. Mohawk. Geoffrey and Myra purchased the lot in 2003, using money provided by David. By 2004, Geoffrey and Myra decided not to move into the house they were building at 2002 N. Mohawk. Geoffrey created defendant 2002 North Mohawk, LLC and convinced Myra (with his promise to sell the property and use the money to purchase a new marital home) to quit-claim her interest to the LLC. In December 2006, Geoffrey and Myra decided to move into the 2002 N.

Mohawk residence, where they lived until Geoffrey forced Myra out in January 2008, when he filed for divorce. At some point, Geoffrey had arranged for the Aldine Trust to own 99% of the 2002 North Mohawk, LLC. The house was sold in April 2008. The mails and the wires were used to effectuate the sale. Plaintiff attached an email message from Geoffrey that stated the Aldine Trust was to receive the first $200,000.00 from the sale and defendant 2002 North Mohawk, LLC the remainder.

## II.     Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v.*

*Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).

**III.  Discussion**

    **A.  Plaintiff's RICO claim**

In Count I, Myra asserts a RICO claim against all defendants. The RICO statute provides a civil cause of action for violations of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ").

Each defendant has moved to dismiss Count I. In her response, Myra states that she brings the count against only defendants Geoffrey, David and Meyer. Accordingly, the Court dismisses without prejudice Count I as to defendants the Aldine Trust and 2002 North Mohawk, LLC.

Myra asserts that defendants violated RICO §§ 1962(c) & (d). Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). RICO defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "pattern of racketeering activity" is "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any

period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C.

§ 1961(f). Racketeering activity, in turn, includes a number of indictable offenses, including the oft-cited mail and wire fraud. 18 U.S.C. § 1961(a). To establish a pattern under RICO, "it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989). As the Supreme Court has explained:

> 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by providing a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*H.J. Inc.*, 492 U.S. at 241-242. Conduct without the threat of continued activity is not actionable. *Gamboa v. Velez*, 457 F.3d 703, 709 (7th Cir. 2006). There, the Seventh Circuit explained:

> Since, as the district court recognized, the amended complaint's allegations foreclosed any threat of continued criminal activity, the natural and commonsense result here is dismissal–the amended complaint cannot support the continuity element. Restated, when, as here, a complaint explicitly presents a distinct and non-reoccurring scheme with a built-in termination point and provides no indication that the perpetrators have engaged or will engage in similar misconduct, the complaint does not sufficiently allege continuity for § 1962(c) purposes even if the purported scheme takes several years to unfold, involves a variety of criminal acts, and targets more than one victim.

*Gamboa*, 457 F.3d at 709.

In order to state a claim under § 1962(c), Myra must allege that defendants: (1) conducted or participated in the conduct of (2) an enterprise (3) through a pattern of (4) racketeering activity. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998).

Here, Myra asserts that Brixton, LLC is the RICO enterprise. For the racketeering activity, Myra asserts that defendants engaged in mail and wire fraud. The Court assumes, without deciding, that those allegations would suffice.

Where plaintiff's RICO claim runs into trouble is the pattern requirement. Congress passed RICO to "eradicate organized, long-term criminal activity." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). Despite "widespread abuse" of civil RICO, RICO "has not federalized every state common-law cause of action available to remedy business deals gone sour." *Midwest Grinding*, 976 F.2d at 1025. "Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). It is not surprising, then, that a number of courts have concluded that the sort of fraud involved in hiding assets in connection with a divorce does not constitute a pattern of racketeering for purposes of RICO. *See Martinez v. Martinez*, 207 F. Supp.2d 1303, 1306 (D. N.M. 2002) ("The amended complaint does allege that Defendants acted over a lengthy period of time, the four years from 1995 to 1999 during which the divorce action was litigated. However, the wrongdoing alleged in the complaint involved only a single scheme, to hide Defendant Martinez' assets from Plaintiff and from the state court; affected a small number of victims; occurred during a finite period of time, the pendency of the divorce litigation; and was not the type of wrongdoing that could inflict harm on other members of the pubic. . . . The conspiracy and fraud alleged in Plaintiff's amended complaint simply do not present any threat of continuing racketeering activity."), *aff'd in relevant part*, 62 Fed. Appx. 309, 313 (10th Cir. 2003); *Streck v. Peters*, 855 F. Supp. 1156, 1166 (D. Haw. 1994) (predicate acts aimed at disrupting divorce proceedings and forcing spouse to divulge secret funds and income did not

constitute pattern of racketeering for purposes of RICO ); *cf. Golden v. Nadler, Pritikin & Mirabelli, LLC*, Case No. 05 C 0283, 2005 WL 2897397 at *7 (N.D. Ill. Nov. 1, 2005) (scheme that had natural ending point at end of domestic relations case could not support RICO claim); *Abernathy v. Erickson*, 657 F. Supp. 504, 509 (N.D. Ill. 1987) (scheme to defraud former spouse out of property did not constitute pattern of racketeering and could not support RICO claim).

In this case, plaintiff has alleged a scheme with a single goal: to hide Geoffrey's income so that it cannot be awarded to Myra in the divorce. Although plaintiff alleges several instances of the use of mail and wires to further the goal, using the mail and wires multiple times does not necessarily show continuity because use of the mails and wires is ubiquitous in modern society. *See Jennings v. Auto Meter Products, Inc.*, 495 F. 3d 466, 475 (7th Cir. 2007) ("We have repeatedly rejected RICO claims that rely so heavily on mail and wire fraud allegations to establish a pattern."). The alleged conduct is distasteful, but it does not amount to a RICO violation. RICO is not meant to turn common-law fraud into a federal claim; it is aimed at long-term, organized crime. Plaintiff likely has many remedies for the alleged conduct, but RICO is not among them.

Plaintiff has failed to state a claim under RICO § 1962(c). Because she fails to state a claim under § 1962(c), she necessarily fails to state a claim under § 1962(d). *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998) (noting that the "touchstone" of liability under § 1962(d) is "an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute.").

The Court grants defendants' motions to dismiss Count I. Count I is dismissed without prejudice.

B. **Plaintiff's state law claims**

The Court has supplemental jurisdiction over plaintiff's remaining claims. Because the Court has disposed of the only claim over which it had subject matter jurisdiction, the Court exercises its discretion to dismiss the remaining state claims without prejudice. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits."). Counts II, III and IV are dismissed without prejudice, and plaintiff is free to file those claims in state court.

IV. **Conclusion**

For the reasons set out above, the Court grants defendants' motions to dismiss. Plaintiff's amended complaint is dismissed without prejudice.

ENTER:

*/s/ George M. Marovich*
George M. Marovich
United States District Judge

DATED: February 18, 2009